28 C.C.P.A. (Patents)

**In re WALDRON.**

**Patent Appeal No. 4411.**

Court of Customs and Patent Appeals.

Feb. 3, 1941.

Orton & Griswold, of New York City (Frederick Griswold, Jr., of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This appeal brings before us for review the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner rejecting all the claims of appellant's application for patent entitled "Rock Breaking Tool."

Involved in the decision below and in the appeal to us there were four claims for the tool per se, and four method claims. At the hearing before us counsel for appellant moved to dismiss the appeal as to all the method claims, that is claims numbered 4, 5, 6, and 8, which motion will be

granted. The claims for the tool are numbered, respectively, 1, 2, 3, and 7.

Claims 1 and 2 read:

"1. A rock splitting tool comprising a hexagonal shank, a collar on said shank and a frusto-conical head with the base of the frusto cone larger than the shank and the top of the frusto cone smaller than the shank, the surface of said frusto cone forming an angle of about four and one-half degrees with its axis.

"2. A rock splitting tool comprising a shank, a collar on said shank and a conical head with the base of the cone attached to the shank, the surface of said cone forming an angle of about four and one-half degrees with its axis."

Claim 3 describes the head on the shaft as "tapering substantially in the ratio of two to three-fourths in an axial distance of seven and three-fourths," and claim 7 defines the head on the shank as "tapering at an angle to the axis thereof between two and one-half and four and one-half degrees."

For convenience, the drawing of the application is here reproduced.

INVENTOR
JAMES N WALDRON
BY
Orton & Luwolde
ATTORNEYS

The following references were cited by the examiner and the board:

German Patent, 276,758, July 21, 1914.
German Patent, 362,242, Oct. 24, 1922.
French Patent, 588,393, Jan. 30, 1925.
French Patent, 610,221, June 1, 1926.

The examiner's rejection seems to have been based primarily upon the French patent, No. 588,393, issued January 30, 1925, but features of the others three references were described, the examiner saying:

"Claims 1, 2, 3 and 7 are believed to be unpatentable over the French patent 588,-393 showing a wedging tool for breaking stone which is of the same type as the one shown by applicant. In Figure 4 of this patent there is shown a tool 10 having one end adapted to be received in the chuck of a jack hammer for receiving the impact blows of the hammer and a wedge portion 11 positioned at the other end. This wedge portion is not frusto-conical in shape however it is of a shape and of a taper sufficient to split rock. The German patent 276,758 shows a wedge C which has a frusto-conical head adapted to wedge into the opening A for the purpose of splitting the rock b. The French patent 610,221 shows a wedge 6 which is frusto-conical in shape and which is used for breaking down the material by a wedging action. The German patent 362,242 shows a wedge d, Figure 1, which is adapted to be driven by the hammer a for driving it into the formation to split the material being worked. This wedge is of substantially the same proportions as applicant's wedge. In view of any of these patents, it is not believed that there would be any invention in making the wedge 11 of the French patent 588,393 frusto-conical in shape. Applicant stresses the fact that the surface of the cone forms an angle of about 4½° with the longitudinal axis of the tool. First it is not believed that this angle is critical and second, it is believed that the tool shown by the German patent 362,242 shows an angle which is substantially the same as the one recited in these claims. This German patent shows a portion g attached to the wedge d so as to form an initial opening in the material. These could be eliminated if only the wedge d were used. This wedge is also intended for use in hard coal, a use which is analogous to rock breaking."

The decision of the board followed in a general way the order and reasoning of the examiner.

It is conceded by appellant that "for centuries, even back as far as the building of the pyramids, building blocks were split off from a quarry wall by means of pins and feathers as shown, for instance, in the Larney United States patent [No. 1,266,-282] * * * herein used only for illustrative purposes," and the brief states, "According to this [Larney] method, a multiplicity of closely positioned holes was drilled along a preselected line recognized by a stone cutter of great experience as the line of cleavage. This took time and required skilled labor. Appellant is not dealing with a situation of this kind."

The brief described the particular purpose for which appellant's tool was designed, as being for the breaking or splitting by unskilled laborers of boulders encountered in making excavations such as trenches in public streets for the laying of gas and water mains in order to expedite the removal of such boulders from the trench line.

In the final analysis the gist of appellant's contention is that by study and experimentation he discovered that a tool having the particular degrees of taper defined in the claims was successful in the use for which designed while others having different degrees of taper were not. In other words, it is contended that the degree of taper is critical. It should be said that in the process of using the tool a hole is drilled in the boulder and the tool is driven into the hole by a hammer or other driving means not involved in the tool claims.

In support of his contention appellant, during the prosecution of the application in the Patent Office, filed an affidavit setting forth the results obtained by the use of his tool, illustrating same by a series of photographs and contrasting such results with the use of other tools made up by appellant having different degrees of taper.

It was conceded during the oral argument before us that no one of the tools used in those experiments was made in conformity with any of the wedges or devices illustrated in the drawings of the prior art references cited.

It seems to us from a comparison of the drawings that the illustrations outlined in the German patent No. 362,242 and that shown in the French patent No. 610,221 most nearly resemble the tool of appellant in appearance. These are described in the quotation from the examiner's statement, supra. It will be noted that the examiner states the wedge of the German patent "is of substantially the same proportions as applicant's wedge."

The examiner further stated, "This wedge is also intended for use in hard coal, a use which is analogous to rock breaking." It may be said that the patent is entitled "Working Broach for Pneumatic Tools." The French patent No. 610,221 is entitled "Improvements in Pneumatic Hammers." The drawing shows a part which is described in the specification as "The tool." It is conical in form, but it may be said that in none of the specifications of the references is there any description of the "degree of taper" such as characterizes appellant's specification and claims, and it would seem that this feature was not relied upon for patentability in those cases, so far as can be determined from the translations of the patents before us. The dimensional features of the tools mentioned in the patents seem to be determinable only from an inspection of the respective drawings.

In the course of its decision the board said:

"Appellant argues that the dimensions of the head 6 were extremely critical and as a result of repeated tests he has discovered that where an element on the conical surface made an angle of between two and one-half and four and one-half degrees with the axis that the tool can be successfully used for breaking rock.

"In spite of appellant's position with respect to the examiner's rejection, it is believed that he has merely discovered what he thinks is an optimum degree of taper for wedges for splitting rock and that there is nothing particularly critical. As the examiner has stated, the process used by applicant in splitting rock has been known for generations in a general sense. It seems obvious that if the taper of a wedge is too short or that the wedge is too blunt to operate satisfactorily, that it is necessary to make it of a greater taper. It is believed that there is nothing critical about finding the proper angle on which such wedges must be built and that there is nothing patentable in applicant's structure over the devices in the art."

■ Appellant has pointed out before us that the German patent 362,242 and the

French patent 610,221 are not designed to break up rock but to work in material, such as coal, which is relatively soft as compared with rock, and in this connection appellant insists that the introductory phrase "A rock splitting tool," appearing in each of the tool claims constitutes a limitation which should be regarded. The general rule to which there are exceptions is that an introductory phrase does not amount to a limitation. See Deutsch et al. v. Ball, 77 F.2d 930, 22 C.C.P.A., Patents, 1322, and cases therein cited. We are not convinced that the instant case presents any subject matter which would justify a departure from the general rule.

We appreciate the fact that the tools of the last named patents are broaches, or drills, which themselves perform the function of drilling holes in the materials worked upon while appellant first drills a hole in the rock and then drives his tool into the hole, but in the light of the other art cited, where holes are first drilled for the reception of wedges, we are unable to discern any patentable difference.

With respect to the question of criticalness as applied to the degree of taper of the head, which has been strongly emphasized before us, it seems proper to say that appellant's specification does not teach criticalness in this respect. Upon the contrary, the concluding phrase of the specification reads: "While the invention both as to the method and the tool have been described with particular reference to certain preferred embodiments, these are to be considered as illustrative of the invention and not in limitation thereof."

The record justifies the belief that appellant has produced a useful tool, but he has failed to convince us that the tribunals below erred in holding that such production did not constitute invention in view of the prior art cited.

The appeal is dismissed as to claims 4, 5, 6, and 8, and the decision of the board is affirmed as to claims 1, 2, 3, and 7.

Affirmed.