34 C.C.P.A.(Patents)

### Application of CLARKE.
### Patent Appeal No. 5274.

Court of Customs and Patent Appeals.

April 22, 1947.

Paul D. Flehr, of San Francisco, Cal., and Stephen W. Blore, of Washington, D. C. (Bacon & Thomas, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

All of the claims, 14 to 17, inclusive, of appellant's application for a patent relating to improvements in drying apparatus and method were rejected by the Primary Examiner of the United States Patent Office and his decision was affirmed by the Board of Appeals. From the decision of the board appeal has here been taken.

In rejecting the claims the examiner cited two references:

Walter, 2,043,685, June 9, 1936.
Hurxthal, 2,068,181, Jan. 19, 1937.

The alleged invention is concerned with a method and apparatus for drying aqueous pastes or slurries of magnesium products, such as magnesium carbonate and magnesium hydroxide. There is in appellant's structure the usual drying chamber through which pass drying belts to which feeding apparatus supplies the material which is partially dried on the first drying belt. It is then transferred to the second belt for final drying. The feeding apparatus is constructed to supply substantially parallel strings of slurry to the first belt where they are partially dried to form friable but self-supporting sticks which break into pieces of short length as they are deposited on the second belt. The second belt moves at a relatively slow speed compared to the first belt and as a result the sticks of material coming from the first belt are piled indiscriminately on the second belt to form a bed of considerable depth through which drying gas may circulate for the final drying of the ma-

terial. Suitable means for circulating hot drying gas into contact with the material are disclosed.

Claim 14 is the broadest of the process claims and reads as follows:

"14. The method of drying thick aqueous slurries of solid alkaline earth compounds which are substantially insoluble in water and which dry to friable masses, which method comprises, forming the slurry being dried into strings, depositing the strings of slurry on a supporting surface in spaced parallel relationship, partially drying the strings of slurry while on said supporting surface sufficient to produce friable solid strings, breaking the partially dried friable solid strings into sticks of solid material, piling the sticks indiscriminately upon and crossing each other to form a bed of the partially dried material having passages extending therethrough, and contacting the bed of partially dried material with a drying gas to further dry the same."

Claims 15 and 16 are more specific and in addition to the elements of claim 14 set forth that the strings are deposited upon a moving flat drying belt in spaced parallel relation and also that the partially dried friable solid strings are broken and piled upon the second belt as they are transferred thereon from the first belt, the "second belt moving at a substantially slower rate than said first-mentioned belt."

Claim 16 also states that the strings deposited upon the first drying belt are contacted with drying gas and that a drying gas is passed through the passages in the bed of sticks upon the second drying belt to further dry the sticks.

Claim 17 is an apparatus claim describing the structure substantially as above described.

The Primary Examiner held that claims 14 to 17 were unpatentable over Walter in view of Hurxthal, stating (reference numerals omitted):

"It appears obvious that materials such as slurries of magnesium compounds can be dried in the apparatus disclosed by Walter and it does not appear to involve invention to operate the belt of Walter at a slower speed than the preliminary drying belts so that such material after having been partially dried and broken into sticks may be piled indiscriminately upon said belt, in view of this teaching in Hurxthal * * *."

The Walter patent discloses a method and apparatus for making tube soap. The soap is forced through nozzles in the form of substantially parallel tubes or ribbons and falls upon a conveyor. It passes over the end of the conveyor and falls upon a second conveyor which carries the soap forward and then over a wheel at which point the tubes are cut into small sections by a cutter. The sections of soap then fall upon another conveyor which carries the material once more the length of the drying tunnel. A part of the drying takes place on the first two conveyors and the final drying on the third conveyor. The patentee states that as many drying stages as desired may be installed both before and after the knife operation. Warm air is supplied for drying purposes.

Hurxthal relates to a method and apparatus for drying plastic and semi-plastic materials such as magnesium carbonate, copper sulphate, etc. The initial drying unit is a hollow, heated, grooved external drying drum to which the material is fed by means of a hopper. A porous belt partially circumvents the priphery of the drum and contacts with the outer surface of the material in the grooves to maintain contact of the material with the drum. The material being dried is removed from the drum by a plurality of needles. The material is broken up into pieces by the drying and shrinking of the material and the broken off portions are discharged over and by a portion of the belt into a receiving hopper which feeds the material to a final drier. Suitable heating means are provided for the purpose of drying the material and fans may be employed for circulation of the air within the chamber.

It is noted that the Hurxthal patent teaches that the initial drying on the drum solidifies and sets the shape of the material preparatory to its passing onto the feed end of the conveyor. The patentee states (reference numerals omitted):

"The final drying may be effected at a relatively lower rate of speed of the

conveyor with respect to the surface speed of the drum and the material having been solidified and formed into pieces of uniform cross-section on the drum may be piled 'haphazardly on the conveyor in a fairly thick layer, the irregular spreading of the pieces of material on the conveyor providing the necessary spaces between such pieces for the passage of the air circulated through the layer of material in the drying chamber."

Subsequent to the statement of the examiner, appellant filed an affidavit of Gunther H. Gloss, a chemical engineer, explaining the process and structure disclosed in appellant's application, criticising the disclosures of the references relied upon, and calling attention to the fact that the Walter patent did not teach a method applicable to the drying of magnesium compounds and that one skilled in the art would not look to the soap drying apparatus or method of Walter to find a practical drier for the handling of magnesium compound. The affidavit pointed out that the Hurxthal apparatus was not a suitable one in that a drum drier of prohibitive proportions would be required to match the capacity of appellant's drier.

This affidavit was presented in conjunction with proposed amended claims submitted by appellant and the case was remanded to the Primary Examiner. In a supplemental statement, the examiner refused entry and consideration of the proposed amendment on account of Rule 68, Rules of Practice Patent Office, 35 U.S.C. A.Appendix, and called attention to the fact that the amended claims were to take the place of the claims then on appeal which had already been substituted for claims which were at one time under final rejection.

The Board of Appeals, while citing the references relied upon by the examiner and making a general affirmance of his decision, concluded that claims 14, 15 and 16 were unpatentable over Hurxthal and that apparatus claim 17 did not distinguish patentably over Walter. In view of the fact that the decision of the examiner was not reversed by the board, we think it necessary to consider only the grounds of rejection applied by the examiner.

While Walter is dealing with soap and the appellant with alkaline earths, the problem of drying would seem to be the same. It would seem too well-settled to require much discussion that the application of an old process to a different material is not patentable. See In re Williams, 87 F.2d 499, 24 C.C.P.A., Patents, 861, and cases therein cited. Therefore, the introductory reference in the apparatus claim 17 does not constitute a limitation which requires a holding that the claim is patentable. This conclusion is supported by many decisions, such as In re Waldron, 117 F.2d 381, 28 C.C.P.A., Patents, 862; Deutsch et al. v. Ball, 77 F.2d 930, 22 C.C.P.A., Patents, 1322, and cases therein cited.

We are in agreement with the statement made by the Solicitor for the Patent Office that "so far as the drying process is concerned it is immaterial what specific method is employed for separating the strings into pieces," whether by a cutter or in the manner disclosed in appellant's application. Hurxthal shows it to be old to bring about this result by breaking.

Walter does not pile his sticks indiscriminately on the conveyor. This feature is shown in Hurxthal, where he was dealing with the same kind of material as is appellant. So it does not amount to invention to apply the Hurxthal expedient of piling the sticks to the Walter process and we are in full agreement with the holding of the board affirming the rejection upon the grounds stated by the examiner.

The decision of the Board of Appeals is affirmed.

Affirmed.